**The STATE of Ohio, Appellee,**

v.

**SZLOH, Appellant.**

[Cite as *State v. Szloh*, 189 Ohio App.3d 13, 2010-Ohio-3777.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 2009–CA–56.

Decided Aug. 13, 2010.

Dennis J. Adkins, for appellee.

Peterson & Peterson, L.L.C., and Robert K. Hendrix, for appellant.

FAIN, Judge.

{¶ 1} Defendant-appellant, Bryan Szloh, appeals from his conviction and sentence for two counts of menacing by stalking. Szloh contends that the judgment of the trial court is against the manifest weight of the evidence. We conclude that the judgment is not against the manifest weight of the evidence—that this is not the rare case in which the finder of fact, in this case the trial judge, lost its way, resulting in a miscarriage of justice. Accordingly, the judgment of the trial court is affirmed.

I

{¶ 2} Szloh and his wife, Josephine Szloh, separated in August 2008, when Ms. Szloh moved into her mother's residence. Divorce proceedings were initiated.

{¶ 3} During May through June 2009, Ms. Szloh and her mother, Marilyn Miller, made three separate police reports regarding Szloh's appearances at the residence. Following one of those reports, police responded and found Szloh at the Miller residence. Szloh was given warnings to stay away from the property and to stop his attempts to contact Ms. Szloh. After the second report, the police again warned him to cease. Following the third report, Szloh was arrested and charged with two counts of menacing by stalking and one count of criminal trespass.

{¶ 4} The matter proceeded to a bench trial on July 14, 2009. Szloh waived his right to counsel and defended himself at trial. The state presented the testimony of Beavercreek Police Officer Eric Grile, Ms. Szloh, and Ms. Miller. Szloh cross-examined both Ms. Miller and Ms. Szloh, but did not examine Grile. Szloh elected not to present any witnesses or evidence. Following the trial, Szloh was convicted on all counts. The court proceeded to sentencing, during which Szloh made the following statement:

{¶ 5} "If I could say a few words. I've been undergoing some problems these last few years. I've been unemployed two-and-a-half, almost three years. I've know [sic] Josephine Szloh for 15 years, been married to her for 10 of those. And I've known Marilyn for 15 years, as long as I've know [sic] Josephine. I don't know what to say, other than she's been separated from me for almost a year, since August, and I've not been able to talk to her. All I get is divorce papers in the mail at the residence. And I'm trying to work through things with her. I really don't have anywhere else to go at this point as far as a place to live. And I'm asking leniency as best as you can, your Honor."

{¶ 6} The trial court imposed a jail sentence of 180 days, with credit for three days served, for one of the menacing-by-stalking convictions. On the other menacing conviction, the trial court issued a consecutive 180–day jail sentence, which was suspended on the condition that Szloh serve a four-year term of supervised probation. The trial court fined Szloh $150 on each of those counts. With regard to the criminal-trespassing charge, the trial court sentenced Szloh to a 30–day jail sentence, which was suspended, as well as a $100 fine.

{¶ 7} From his conviction and sentence, Szloh appeals.

## II

{¶ 8} Szloh's sole assignment of error states as follows:

{¶ 9} "The judgment of the trial court is against the manifest weight of the evidence."

{¶ 10} Szloh contends that his convictions for menacing by stalking are not supported by the weight of the evidence.[1] A review of his argument in support of his assignment of error indicates that he also challenges the sufficiency of the evidence presented by the state. Specifically, Szloh claims that the state failed to prove that he caused Ms. Szloh or her mother to experience either fear of physical harm or mental distress.

---

1. Szloh does not challenge his conviction for criminal trespassing.

{¶ 11} A sufficiency-of-the-evidence argument challenges whether the state has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶ 12} In contrast, when reviewing a judgment under a manifest-weight standard of review, " '[t]he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction.' " *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 13} Szloh was convicted on two counts of menacing by stalking, in violation of R.C. 2903.211(A)(1), which provides as follows:

{¶ 14} "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person."

{¶ 15} "Pattern of conduct" is defined as "two or more actions or incidents closely related in time * * *." R.C. 2903.211(D)(1). "Mental distress" is defined as either of the following:

{¶ 16} "(a) Any mental illness or condition that involves some temporary substantial incapacity;

{¶ 17} "(b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services." R.C. 2903.211(D)(2).

{¶ 18} "Mental distress need not be incapacitating or debilitating * * * [and] expert testimony is not required to find mental distress." *Perry v. Joseph*, Franklin App. Nos. 07AP–359, 07AP–360, and 07AP–361, 2008-Ohio-1107, 2008 WL 660317, ¶ 8. "A trial court is permitted to rely on its knowledge and experience in determining whether mental distress has been caused." Id.

{¶ 19} The culpable mental state of menacing by stalking is "knowingly," which is defined in R.C. 2901.22(B) as follows: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

{¶ 20} Although not argued by Szloh, we conclude that the state presented sufficient evidence of the elements of "knowingly" and "engaging in a pattern of conduct." On the dates in question, the Szlohs were in the midst of divorce proceedings and had been separated for almost one year. As evidenced by his closing statement and his cross-examination of Ms. Miller, it is clear that Szloh was unhappy at the prospect of divorce and that even after the divorce was final, he maintained a belief that he could work things out with Ms. Szloh if he was able to talk to her.

{¶ 21} On May 29, 2009, Szloh entered Ms. Szloh's car without permission while it was parked at her place of employment. A day later, Ms. Szloh was walking her dog when Szloh began to follow her in his car. According to Ms. Szloh, he stated, "You're still my property, we're still married, get into this car, you need to come with me." At that point, Ms. Szloh told him to leave, and began to run back to her home. Ms. Szloh and her mother locked the residence doors. They observed Szloh enter Ms. Szloh's vehicle without permission and retrieve a lawn chair. Szloh then sat in the chair on the driveway. He also "rang the doorbell incessantly" and ignored Ms. Miller's requests for him to leave. Szloh did not leave the property until ordered to do so by a police officer. Szloh was told to stop contacting the women and to stay away from the residence.

{¶ 22} On June 15, 2009, Szloh appeared at Ms. Miller's residence three separate times. The police were again contacted, and Szloh was warned to stay away from the women and the house. The Szlohs' divorce was final on June 18.

{¶ 23} On June 22, 2009, Szloh returned to the Miller residence. Ms. Miller and Ms. Szloh ran into the home from the back yard and locked themselves into a bedroom. Szloh actually entered the house on that date. The police were again contacted and a report was filed, and the police began looking for Szloh in order to arrest him.

{¶ 24} During the period from May 29 to his arrest, Szloh made daily telephone calls to Ms. Szloh's cellular telephone and also made some calls to Ms. Miller's

telephone number. Szloh also called the home and Ms. Szloh's cell phone on June 22 after entering the residence. He also continued to call on June 23. Szloh was arrested on June 24.

{¶ 25} The record supports the trial court's finding that Szloh acted knowingly when engaging in this conduct, as evidenced by his repeated efforts to contact Ms. Szloh despite warnings from the police to cease doing so. Also, given that the women made repeated requests for him to leave and clearly were trying to avoid contact with him, it is not unreasonable to conclude that he knew his behavior could cause mental distress. Finally, the fact that Ms. Szloh ran away from her ex-husband and locked herself in the house should have alerted a reasonable person in Szloh's position that she was afraid of him. Yet he continued to attempt to contact her.

{¶ 26} We now turn to Szloh's argument in support of his assignment of error, which is that the state failed to prove the element of mental distress. He argues that there is no evidence that he threatened either woman. He further argues that Ms. Szloh "admitted that she was already on anxiety medications from the time of her marriage to [him]" and that her claim that she was treated for anxiety caused by his behavior is without merit. Finally, he contends that Ms. Miller did not seek treatment for any claimed mental distress.

{¶ 27} It should be noted that R.C. 2903.211(D)(2)(b) does not require the prosecution to prove that the victim received treatment for mental distress. However, in this case, Ms. Szloh sought and received treatment for the anxiety and stress that she testified was caused by her ex-husband's conduct. Ms. Szloh testified that her anxiety over Szloh's behavior prompted her physician to prescribe antianxiety medication. She further testified that the stress caused her to be unable to sleep and that her doctor prescribed her sleeping-aid medications as well. While she admitted that she had been previously prescribed antianxiety medication during the marriage, she testified that Szloh's behavior had prompted the current treatment by a psychologist and her doctor.

{¶ 28} Furthermore, Ms. Szloh testified that she was scared of her ex-husband. She testified that his behavior caused her and her mother to keep their doors and windows covered and doors locked, because they feared that Szloh would return to the house. Ms. Szloh testified that she and her mother quit walking their dog because of this fear. She also testified that she and her mother spent nights at the homes of friends, because they were scared to stay in their own house. Ms. Miller corroborated this testimony and also testified that Szloh's conduct caused her to be "fearful" and to suffer from stress and anxiety. She also testified that her stress caused her to be unable to sleep at night.

{¶ 29} The trial court was free to believe all, some, or none of the testimony of the state's witnesses, since the credibility of witnesses and the weight to be given

to their testimony are primarily matters for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, at paragraph one of the syllabus. Obviously, the trial court chose to credit the testimony of Ms. Szloh and Ms. Miller concerning their mental distress; we cannot say that it was error for the trial court to do so.

{¶ 30} From our review of the evidence in the record, we conclude that there is sufficient evidence to support the menacing-by-stalking convictions and that they are not against the manifest weight of the evidence.

{¶ 31} Szloh's sole assignment of error is overruled.

### III

{¶ 32} Szloh's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

*Judgment affirmed.*

DONOVAN, P.J., and VUKOVICH, J., concur.

JOSEPH J. VUKOVICH, J., of the Seventh District Court of Appeals, sitting by assignment.