[Cite as *State v. Cayavec*, 2020-Ohio-3610.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

BRENT CAYAVEC,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 19 MA 0069**

---

Criminal Appeal from the
Mahoning County Court No. 2, Mahoning County, Ohio
Case No. 2017 CRB 1883

**BEFORE:**
David A. D'Apolito, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Paul J. Gains*, Mahoning County Prosecutor*, and *Atty. Ralph M. Rivera*, Assistant Prosecuting Attorney, 21 West Boardman Street, 6th Floor, Youngstown, Ohio 44503, for Plaintiff-Appellee and

*Atty. Edward Czopur,* DeGenva & Yarwood, Ltd., 42 North Phelps Street, Youngstown, Ohio 44503, for Defendant-Appellant.

Dated: June 29, 2020

**D'Apolito, J.**

**{¶1}** Appellant, Brent Cayavec appeals his conviction following a jury trial in Mahoning County Court No. 2 for one count of menacing by stalking, in violation of R.C. 2903.211(A)(1), a misdemeanor of the first degree. Appellant's sentence has been held in abeyance pending the outcome of this appeal.

**{¶2}** Appellant argues that the trial court had neither subject matter jurisdiction nor personal jurisdiction because the conduct giving rise to his criminal prosecution took place in Poland, Ohio. He further argues that the trial court erred in admitting prejudicial evidence, that is, evidence that he was stalking the victim, because there was no testimony that she was aware of his alleged actions. Next, Appellant contends that the cumulative effect of the foregoing errors is grounds for reversal. Finally, Appellant argues there was insufficient evidence to support his conviction. For the following reasons, Appellant's conviction is affirmed.

## FACTS AND PROCEDURAL HISTORY

**{¶3}** Appellant and Mary Louise Crespo Valise terminated their admittedly rocky two-and-a-half-year relationship in May of 2017. From March to May of 2017, they lived together with Valise's three young daughters on Centennial Drive in Poland, Ohio.

**{¶4}** According to Valise, the relationship ended on Memorial Day when Appellant "got physical with [her]." (Trial Tr., p. 81.) She initially testified that they both called the police to the residence that day, but then conceded that Appellant called the police and she left the residence with her daughters.

**{¶5}** Appellant moved from the Centennial Drive residence immediately, but Valise and her daughters remained there until June 30, 2017. Valise planned to find another home in the same school district.

**{¶6}** According to Appellant's testimony, the Centennial Drive residence was left in disrepair and he spent several thousand dollars to resolve claims by the homeowners. Valise testified that the premises were "fine" when she left and she denied that she was involved in any litigation resulting from her tenancy. (*Id.,* p. 83.)

**{¶7}** Valise decided to rent a home on North Lima Road in Poland, but when she took her mother to see the home, they discovered a notice posted on the garage door. The notice was captioned "WARNING," and purported to be written by the owners of the residence on Centennial Drive. The notice read, in pertinent part:

> **<u>DO NOT RENT TO LOUISE CRESPO!</u>** She abandoned our home we rented to her June 29, this year 2017. We have a breach of Contract lawsuit against her right now! She destroyed our house and owe [sic] us thousands of dollars in back rent and for maintenance and damages. She signed a lease and moved into our Property on March 3, 2017 at 64 Centennial Dr Poland 44514. She was just arrested Wed night and is currently in the Trumbull County Jail for a warrant from 2016 for **<u>THEFT</u>** and **<u>Writing Bad Checks!</u>**
>
> **Please call us IMMEDIATELY!!! Louise Crespo is Trouble and will SCAM you Louise has NO Job, NO Money and is an Alcoholic and Pathological Liar!!!**
>
> **We beg You to not let her move in and Please call us before she scams you!!!**

**{¶8}** Valise testified that she recognized Appellant's handwriting, and she explained to the owners of the North Lima Road residence that the warning notice was posted by her ex-boyfriend. According to Valise, the owners refused to rent the house to her because they feared that Appellant was unstable and might damage their property. Appellant denied both forging and posting the warning notice.

**{¶9}** However, Appellant conceded that he sent an e-mail around that same time detailing Valise's arrest to the football president of the Poland Little Bulldogs, where Valise volunteered as the cheer president. According to Valise, she was asked to resign from her volunteer work with the cheerleaders as a result of Appellant's e-mail.

**{¶10}** Valise explained at trial that she had unwittingly written a bad check to pay a fine due on a speeding ticket issued in Trumbull County. She claimed that she had forgotten that the account on which the check was written had been closed. One evening,

when she was on her way to visit Appellant at his parent's residence in Warren, Ohio, she was stopped by police, and was arrested on the outstanding warrant.

{¶11} According to Valise's testimony, someone had placed a 9-1-1 call and reported that she was driving erratically. Valise testified that she submitted to a breathalyzer test and tested within the legal limit. She implied that Appellant placed the 9-1-1 call, but later conceded he was not aware that she was in Warren.

{¶12} Valise testified that she and her daughters were forced to leave Poland because it is a small town and word spread of her arrest. They moved into the home of Valise's mother, Kimberly Brent in Boardman, Ohio. As a consequence, Valise's daughters were required to transfer to the Boardman public school system.

{¶13} Brent testified that Appellant drove past her residence in a grey automobile at "odd times" while Valise and her daughters were staying with her. Brent further testified that Appellant drove by the house between ten and thirteen times, however, she provided no time frame for the alleged events and did not testify that she told Valise about Appellant's conduct. Appellant denied driving past Brent's house.

{¶14} Valise testified that she told Appellant to "leave [her and the children] alone" when she and Appellant terminated their relationship. (*Id.* at 90.) However, on August 29, 2017, Appellant sent bouquets of flowers and gifts to Valise's younger daughters at Market Street Elementary School, and to Valise's oldest daughter at Center Middle School in Boardman, Ohio.

{¶15} Two typewritten floral cards were admitted into evidence. Both floral cards were signed with Appellant's name and contained the reference: "Delivery date: 8/29/17 Tuesday." The envelopes, also admitted into evidence, state the addresses of both schools, which are located in Boardman, Ohio.

{¶16} The elementary school contacted Valise and explained that school policy prohibited students from receiving floral deliveries on school grounds. Appellant testified that he sent the flowers because he wanted to ease the girls' transition to their new schools.

{¶17} Appellant also sent birthday cards to one of Valise's daughters at the elementary school, which were hand-dated 2017 and 2018. Both cards contained lengthy handwritten sentiments and were admitted into evidence. The state encouraged jurors

to compare the handwriting from the warning notice, which was also admitted into evidence, to the handwriting on the birthday cards, which Appellant conceded was his own.

{¶18} Valise filed for a civil protection order on October 6, 2017. The criminal complaint in this matter was filed on November 1, 2017. The complaint alleged that the crime of menacing by stalking, which requires a pattern of conduct, occurred on or about July 16, 2017 to October 28, 2017. The return of warrant occurred on December 11, 2018. Appellant was not served with the protection order until March or April of 2019.

{¶19} On cross-examination, Valise was asked to explain three lengthy series of texts exchanged between her and Appellant, which included photographs of Valise, and were exchanged after she terminated her relationship with him. In each of the texts, Valise initiated contact with Appellant and also attempted to initiate physical contact with him.

{¶20} First, Valise denied sending photographs of herself to Appellant, and asserted that Appellant had "spoofed" her mobile phone number to make it appear that she was sending photographs to him. (*Id.,* p. 109-110.) Appellant denied having the capability to manipulate Valise's mobile phone number.

{¶21} With respect to her plea to Appellant on November 22, 2017 that they meet one last time, Valise claimed to be acting on orders from her previous counsel. Valise testified that her attorney told her to entice Appellant to travel to Mahoning County so he could be served with the protection order. When asked if it was "beyond [her] to make things up," she responded, "no." (*Id.,* p. 107.)

{¶22} Both parties agreed that their final contact was a three-to-four-hour telephone conversation that occurred in June of 2018. Valise testified that she initiated their final conversation by way of a text message. She testified that Appellant advised her to drop charges underlying this appeal and informed her that if she thought his past behavior was bad, "[s]he hadn't seen anything yet." (*Id.,* p. 93.)

{¶23} Valise summarized the lengthy telephone conversation as follows: "[I]f you know [Appellant], I mean, he likes to talk and get his – his words out there. So most of it was me listening to him and the things he was going to do if I didn't drop this warrant." (Id., p. 105.) Despite Valise's testimony that the lion's share of her three-to-four-hour

conversation with Appellant involved threats of retribution, she conceded on cross-examination that she never reported the alleged threats to the police. Appellant denied threatening Valise.

**{¶24}** Valise testified that she went to "different counselors and psychologists" in order to deal with the anxiety caused by Appellant's conduct, and was prescribed anti-anxiety medication. (*Id.*, p. 88.) On cross-examination, Appellant conceded that she suffered from anxiety and depression, and had been prescribed medication for these conditions for five years, which predated the commencement of her relationship with Appellant.

**{¶25}** The jury trial commenced on May 22, 2019. Appellant was found guilty and sentenced to 180 days in jail, with 150 days suspended. Three of the remaining thirty days were to be served in jail, and 27 days were to be served under electronically monitored house arrest. Appellant was placed on twelve months of community control, and a fine was assessed in the amount of $250.00 plus costs. Appellant was referred for an anger management assessment and ordered not to have any contact with Valise. This timely appeal followed.

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT WAS WITHOUT SUBJECT MATTER JURISDICTION TO HEAR THE CASE AS NO EVIDENCE WAS INTRODUCED AS TO WHERE THE ALLEGED EVENTS OCCURRED.**

## ASSIGNMENT OF ERROR NO. 2

**APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL AND/OR DUE PROCESS AS CONTEMPLATED BY BOTH THE OHIO AND UNITED STATES CONSTITUTIONS AS PERSONAL JURISDICTION WAS NEVER ESTABLISHED. IN THE ALTERNATIVE, APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE REPRESENTATION BY TRIAL COUNSEL FOR FAILING TO OBJECT TO THE SAME.**

{¶26} Appellant's first and second assignments of error challenge the trial court's authority to adjudicate this case. They will be addressed together for the purpose of judicial economy.

{¶27} "The term "jurisdiction" refers to the court's statutory or constitutional authority to hear a case." *State v. Mbodji*, 129 Ohio St.3d 325, 2011-Ohio-2880, ¶ 10. "The concept encompasses jurisdiction over the subject matter of a case as well as jurisdiction over the person." *Id.* While a challenge to a court's subject-matter jurisdiction can never be waived, "a challenge to personal jurisdiction or jurisdiction over the person is waivable by the defendant's voluntary submission at an initial appearance or by entering a plea of not guilty." *Id.*, citing *State v. Holbert*, 38 Ohio St.2d 113, 118 (1974).

{¶28} The State of Ohio has subject matter jurisdiction over a crime if any element of the offense, under the laws of this state, takes place in Ohio. R.C. 2901.11(A)(1). The Ohio Constitution establishes the right of the accused to have a "trial by an impartial jury of the county in which the offense is alleged to have been committed." Ohio Constitution, Article I, Section 10. R.C. 2901.12 further guarantees that right by requiring that a criminal trial shall be held in a court with subject matter jurisdiction "in the territory of which the offense or any element of the offense was committed."

{¶29} With respect to criminal matters, R.C. 1901.20(A)(1) provides that a municipal court has subject matter jurisdiction over misdemeanors committed within its territorial jurisdiction. All territory within a county not subject to the territorial jurisdiction of any municipal court is subject to the jurisdiction of the county court, which has jurisdiction of all misdemeanor cases occurring within that territory. See R.C. 1907.01; R.C. 1907.02(A)(1).

{¶30} Appellant contends that the conduct giving rise to his menacing by stalking conviction occurred in Poland, Ohio, and, as a consequence, Struthers Municipal Court had both subject matter and personal jurisdiction over his criminal prosecution. Appellant further argues that, to the extent that the state relies on Brent's testimony that Appellant repeatedly drove passed her Boardman residence to establish the jurisdiction of the Boardman County Court, the state did not offer any evidence that Valise was aware of Appellant's actions.

**{¶31}** The trial testimony and exhibits establish that Appellant sent flowers to Appellant's two youngest daughters at Market Street Elementary School and her eldest daughter at Center Middle School on August 29, 2017. Therefore, at least one part of Appellant's pattern of conduct occurred in Boardman, Ohio.

**{¶32}** Further, Appellant's counsel conceded at oral argument that, if the record established that the flowers were sent to Boardman, Ohio, the county court had jurisdiction to hear the case. Accordingly, we find that the county court had both subject matter jurisdiction and personal jurisdiction over Appellant's criminal prosecution. Further, Appellant entered a plea of not guilty, so he waived any challenge to personal jurisdiction.

**{¶33}** Appellant argues in the alternative that he received ineffective assistance of counsel because his trial counsel did not object to the jurisdiction of the county court. In order to demonstrate ineffective assistance of counsel, Appellant must show that trial counsel's performance fell below an objective standard of reasonable representation, and prejudice arose from the deficient performance. *State v. Bradley*, 42 Ohio St.3d 136, 141-143, 538 N.E.2d 373 (1989), citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Both prongs must be established: If counsel's performance was not deficient, then there is no need to review for prejudice. Likewise, without prejudice, counsel's performance need not be considered. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000). However, as we have found that part of Appellant's conduct giving rise to his conviction occurred in Boardman, Ohio, Appellant cannot demonstrate that trial counsel's representation was deficient because the county court had jurisdiction over his criminal prosecution.

**{¶34}** In summary, we find that the record establishes that part of Appellant's pattern of conduct occurred in Boardman, Ohio, and, as a consequence, the county court had both subject matter jurisdiction and personal jurisdiction over Appellant's criminal prosecution. Therefore, we find that Appellant's first and second assignments of error have no merit.

## ASSIGNMENT OF ERROR NO. 3

**APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL AND/OR DUE PROCESS AS CONTEMPLATED BY BOTH THE OHIO AND UNITED**

STATES CONSTITUTIONS DUE TO THE TESTIMONY OF MS. BRENT, WHICH WAS IRRELEVANT, HAD NO PROBATIVE VALUE AND WAS HIGHLY PREJUDICIAL. IN THE ALTERNATIVE, APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE REPRESENTATION BY THE TRIAL COURT FOR FAILING TO OBJECT TO THE SAME.

## ASSIGNMENT OF ERROR NO. 4

**APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL AND/OR DUE PROCESS AS CONTEMPLATED BY BOTH THE OHIO AND UNITED STATES CONSTITUTIONS DUE TO THE TESTIMONY OF MS. CRESPO, ABOUT ALLEGATIONS OCCURING WELL AFTER THE TIME FRAME SET FORTH IN THE COMPLAINT. IN THE ALTERNATIVE, APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE REPRESENTATION BY THE TRIAL COURT FOR FAILING TO OBJECT TO THE SAME.**

{¶35} Appellant's third and fourth assignments of error challenge the admission of evidence at trial. They shall be addressed together for the purpose of judicial economy.

{¶36} The admission of evidence is within the discretion of the trial court and the court's decision will only be reversed upon a showing of abuse of discretion. *State v. Barnes*, 94 Ohio St.3d 21, 23, 759 N.E.2d 1240 (2002). However, Appellant did not object to the challenged testimony at trial. Failure to object to trial testimony waives all but plain error review. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 108. Plain error is one in which but for the error, the outcome of the trial would have been different. *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978).

{¶37} R.C. 2903.111(A)(1) provides that no person by engaging in a pattern of conduct shall knowingly cause mental distress to the other person. As used in R.C. 2903.211, a "pattern of conduct" means "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." R.C. 2903.211(D)(1). We have recognized that subsection (D)(1) does not require that a pattern of conduct be proven by events from two different days, but that the pattern of conduct could arise out of two or more events occurring on the same date,

Case No. 19 MA 0069

provided that there are sufficient intervals between them. *Morton v. Pyles,* 7th Dist. Mahoning No. 11 MA 124, 2012-Ohio-5343, ¶ 13.

**{¶38}** Appellant argues that the trial court abused its discretion when it admitted Brent's testimony that Appellant drove past her home ten to thirteen times, because neither she nor Valise testified that Valise was aware of Appellant's conduct. However, we find that the state established a pattern of conduct, which included the forgery and posting of the notice on North Lima Road, the e-mail sent to Poland Little Bulldogs, and the flowers, gifts, and cards sent to Valise's daughters at their schools. In other words, we find that the record contains evidence of a pattern of harassment without Brent's testimony. Therefore, this Court concludes that, even if the trial court erred in admitting Brent's testimony, the testimony did not change the outcome of the trial.

**{¶39}** Next, Appellant argues that Valise's testimony regarding threats made by Appellant during their June 2018 telephone conversation were outside of the time frame alleged in the criminal complaint. The state argues that the trial court "may at any time before, during, or after a trial amend a criminal complaint with respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged." Crim.R. 7(D). However, there is no evidence that the criminal complaint was amended.

**{¶40}** Nonetheless, we find that the admission of Valise's testimony did not alter the outcome of the trial. As previously stated, the record contains evidence of a pattern of harassment independent of the evidence that occurred outside of the time frame stated in the indictment. Further, Valise conceded on cross-examination that she did not report the telephone conversation to the police, which diminishes the prejudicial effect of the admission of her testimony.

**{¶41}** Because the record contains evidence of a pattern of harassment, we find that Brent's testimony regarding Appellant's alleged appearances near her residence, and Valise's testimony regarding the June 2018 telephone conversation, did not alter the outcome of the trial. Likewise, Appellant has failed to demonstrate prejudice to establish ineffective assistance of counsel. Therefore, we find that Appellant's third and fourth assignments of error have no merit.

Case No. 19 MA 0069

## ASSIGNMENT OF ERROR NO. 5

**THE CUMULATIVE EFFECT OF THE ERRORS OUTLINES IN ASSIGNMENTS II-IV, ABOVE, IF NOT SUFFICIENT FOR REVERSAL SEPARATELY, DENIED APPELLANT OF A FAIR TRIAL AND DUE PROCESS AS COMTEMPLATED BY BOTH THE OHIO AND UNITED STATES CONSTITUTIONS UNDER EITHER PLAIN ERROR, OR INEFFECTIVE ASSISTANCE OF COUNSEL.**

{¶42} Under the doctrine of cumulative error, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of the errors does not individually constitute cause for reversal. *State v. Garner*, 74 Ohio St.3d 49, 64, 1995-Ohio-168, 656 N.E.2d 623. The doctrine of cumulative error is inapplicable when the alleged errors are found to be harmless or nonexistent. *Id.*; *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, at ¶ 48. Further, where a number of the alleged errors are waived for failure to object, the plain error doctrine is applicable to the cumulative error analysis. *State v. Young*, 7th Dist. No. 07 MA 120, 2008-Ohio-5046, at ¶ 66.

{¶43} As we have found only harmless error, we find no prejudice resulting from cumulative error. Therefore, we find that Appellant's fifth assignment of error is meritless.

## ASSIGNMENT OF ERROR NO. 6

**THERE WAS INSUFFICIENT EVIDENCE TO CONVICT APPELLANT FOR EACH OF THE FOLLOWING REASONS:**

**BECAUSE THE STATE FAILED TO PROVE THAT ANY OF THE ALLEGED CONDUCT OCCURRED WIHIN THE TIME FRAME OF THE COMPLAINT.**

**BECAUSE THE STATE FAILED TO PROVE THAT MS. CRESPO FEARED PHYSICAL HARM AND/OR THAT APPELLANT CAUSED MENTAL DISTRESS.**

Case No. 19 MA 0069

**{¶44}** "Sufficiency of the evidence is a legal question dealing with adequacy." *State v. Pepin-McCaffrey*, 186 Ohio App.3d 548, 2010-Ohio-617, 929 N.E.2d 476, ¶ 49 (7th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "Sufficiency is a term of art meaning that legal standard which is applied to determine whether a case may go to the jury or whether evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Draper*, 7th Dist. Jefferson No. 07 JE 45, 2009-Ohio-1023, ¶ 14, citing *State v. Robinson*, 162 Ohio St. 486, 124 N.E.2d 148 (1955).

**{¶45}** When reviewing a conviction for sufficiency of the evidence, a reviewing court does not determine "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Rucci*, 7th Dist. Mahoning No. 13 MA 34, 2015-Ohio-1882, ¶ 14, citing *State v. Merritt*, 7th Dist. Jefferson No. 09 JE 26, 2011-Ohio-1468, ¶ 34. Further, all evidence presented in the "state's case in chief" is used to determine sufficiency; thus, inadmissible evidence that was admitted in state's case in chief can be considered. *State v. Brewer,* 121 Ohio St.3d 202, 2009–Ohio–593, 903 N.E.2d 284, ¶ 1.

**{¶46}** In reviewing a sufficiency of the evidence argument, the evidence and all rational inferences are evaluated in the light most favorable to the prosecution. *State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998). A conviction cannot be reversed on the grounds of sufficiency unless the reviewing court determines no rational juror could have found the elements of the offense proven beyond a reasonable doubt. *Id.*

**{¶47}** First, Appellant argues that the state failed to prove that any of the alleged conduct occurred within the time frame described in the complaint. R.C. 2941.08(C) states that an indictment is not made invalid for stating the time imperfectly. Additionally, the Ohio Supreme Court has long held that precise times and dates are not ordinarily essential elements of offenses. Thus, the failure to provide dates and times in an indictment will not alone provide a basis for dismissal of the charges. A certain degree of inexactitude of averments, where they relate to matters other than elements of the offense, is not per se impermissible or necessarily fatal to a prosecution. *State v. Sellards*, 17 Ohio St.3d 169, 171, 478 N.E.2d 781 (1985).

**{¶48}** Additionally, the Ohio Supreme Court recognized that two things are taken into consideration regarding specific dates in an indictment or a bill of particulars: First,

whether the state has more detailed information and second, whether this information is material to the defendant's ability to prepare and present a defense. *State v. Lawrinson*, 49 Ohio St.3d 238, 239, 551 N.E.2d1261 (1990).

**{¶49}** The complaint alleged that the crime of menacing by stalking, which requires a pattern of conduct, occurred on or about July 16, 2017 to October 28, 2017, that is, the summer and fall of 2017. It can be gleaned from the record that the warning notice was posted and the Poland Bulldogs e-mail was sent around June 30, 2017, when Valise and her daughters left the Centennial Drive residence. The record directly establishes that the flowers and gifts that Appellant sent to Valise's daughter at Market Street Elementary School were sent on August 29, 2017. Therefore, we find that Appellant's ability to prepare his defense was not impacted by the state's imperfect statement of the time frame in the indictment, and, therefore, Appellant suffered no prejudice due to the state's failure to amend the criminal complaint to conform with the evidence adduced at trial.

**{¶50}** Next, Appellant contends that there was insufficient evidence that Valise suffered mental distress. R.C. 2903.211(D)(2) defines "mental distress" as:

> (a) Any mental illness or condition that involves some temporary substantial incapacity;

> (b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.

R.C. 2903.211(D)(2)(a)-(b).

**{¶51}** Mere mental stress or annoyance does not constitute mental distress for purposes of the menacing by stalking statute. *Caban v. Ransome*, 7th Dist. No. 08MA36, 2009-Ohio-1034, ¶ 7. ¶ 29. The statute does not, however, require that the mental distress be totally or permanently incapacitating or debilitating, rather it merely has to be substantial. We have recognized that incapacity has been determined to be substantial if

it has a significant impact upon the victim's daily life. *Morton, supra,* at ¶ 15, citing *Retterer v. Little*, 3d Dist. No. 9-11–23, 2012-Ohio–131, ¶ 41.

**{¶52}** Valise testified that she went to different counselors and psychologists in order to deal with the anxiety caused by Appellant's conduct, and was prescribed anti-anxiety medication. Based on her testimony, we find that Valise's testimony was sufficient to establish the mental distress element of menacing by stalking conviction. As a consequence, we find that Appellant's sixth assignment of error has no merit.

## CONCLUSION

**{¶53}** In summary, we find that part of the pattern of conduct that gave rise to Appellant's conviction for menacing by stalking occurred in Boardman, Ohio, and, therefore, the county court had both subject matter jurisdiction and personal jurisdiction over Appellant's criminal prosecution. Next, we find that there was sufficient evidence of a pattern of harassment adduced at trial, and that any error made by the trial court in admitting testimony was harmless, that is, it did not alter the outcome of the trial. We further find that there was sufficient evidence of mental distress. Finally, we find that the state's failure to provide exact dates for Appellant's conduct did not affect his ability to prepare his defense and, therefore, he did not suffer any prejudice. For the foregoing reasons, Appellant's conviction is affirmed.

Waite, P.J., concurs.

Robb, J., concurs.

Case No. 19 MA 0069

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Mahoning County Court No. 2, Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**