[Cite as *Ramsey v. Pellicioni*, 2016-Ohio-558.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| ANGELA RAMSEY, | ) | |
| | ) | |
| PETITIONER-APPELLEE, | ) | |
| | ) | CASE NOS. 14 MA 134 |
| V. | ) | 14 MA 135 |
| | ) | |
| REBECCA AND GARY PELLICCIONI, | ) | OPINION |
| | ) | |
| RESPONDENTS-APPELLANTS. | ) | |

CHARACTER OF PROCEEDINGS: Civil Appeal from Court of Common Pleas of Mahoning County, Ohio Case Nos. 14 CV 514, 14 CV 515

JUDGMENT: Reversed

APPEARANCES:
For Plaintiff-Appellee                Attorney Bruce M. Broyles
                                      5815 Market Street, Suite 2
                                      Boardman, Ohio 44512

For Defendant-Appellants              Attorney Charles E. Dunlap
                                      7330 Market Street
                                      Boardman, Ohio 44512

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Carol Ann Robb

Dated: February 12, 2016

DONOFRIO, P.J.

{¶1} Respondents-appellants, Rebecca and Gary Pelliccioni, appeal from Mahoning County Common Pleas Court judgments granting petitioner-appellee, Angela Ramsey, civil stalking protection orders against them.

{¶2} Angela Ramsey, and her husband Timothy, are neighbors of the Pelliccionis. The two families have been in an on-going dispute since 2007, regarding Mr. Ramsey's use of his property to run a landscaping business. In 2009, in a case filed by Mr. Pelliccioni, Mr. Ramsey was found to be in violation of an Ellsworth Township Zoning Ordinance. Mr. Ramsey subsequently purchased property across the road from his home. That property is located in a different township without the zoning restrictions. Mr. Ramsey moved his landscaping equipment to that property.

{¶3} In February 2014, the Pelliccionis filed a motion to hold Mr. Ramsey in contempt of the 2009 judgment. During the course of the contempt hearing, the Pelliccionis submitted several hundred photographs into evidence. These photographs were of the Ramseys' property from 2007 to 2014, and some of the photographs included the Ramseys' children.

{¶4} During the time when the Pelliccionis were taking the photographs of the Ramseys' property, Mr. Ramsey asked them to stop because they were upsetting his family. The Ramseys contacted the police numerous times between 2007 and 2014, in an effort to stop the Pelliccionis from taking photographs of their property and family.

{¶5} Mrs. Ramsey filed petitions for civil stalking protection orders (CSPOs) on February 25, 2014, against both of the Pelliccionis. She sought protection on her own behalf and on behalf of Mr. Ramsey and their three minor children.

{¶6} A magistrate held a hearing on the petitions where he heard testimony from Mr. Ramsey and Mr. Pelliccioni and considered numerous exhibits. The magistrate then issued CSPOs against both Mr. and Mrs. Pelliccioni effective until July 1, 2016.

{¶7} The Pelliccionis filed objections to the magistrate's decision stating the

magistrate lacked sufficient evidence to grant the CSPOs. The trial court overruled the objections and entered judgments in accordance with the magistrate's CSPOs.

{¶8} The Pelliccionis each filed a separate timely notice of appeal. This court consolidated the two appeals. The Pelliccionis now raise two assignments of error.

{¶9} The Pelliccionis' first assignment of error states:

THE TRIAL COURT ERRED WHEN IT ADOPTED THE MAGISTRATE'S DECISION GRANTING THE RAMSEY'S [sic] MOTION FOR A CIVIL STALKING PROTECTION ORDER.

{¶10} The Pelliccionis argue there was no evidence that they caused mental distress to the Ramseys. They note there is no allegation that they ever threatened physical harm. The Pelliccionis go on to argue there is no evidence that the Ramseys suffered any mental distress. Thus, they assert the evidence did not support the issuance of the CSPOs.

{¶11} Initially, we must address Mrs. Ramsey's claim that the Pelliccionis have waived this issue on appeal by failing to make a specific objection in the trial court.

{¶12} Pursuant to Civ.R. 53(D)(3)(b)(ii), objections to a magistrate's decision must be specific and state with particularity the grounds of objection. "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)." Civ.R. 53(D)(3)(b)(iv).

{¶13} In this case, the Pelliccionis' objections stated that "the magistrate lacked sufficient evidence upon which to grant the petitioner a civil protection order." This statement is sufficient to preserve the issue for review on appeal. The Pelliccionis' argument on appeal is the same as that stated in their objections, that there was not sufficient evidence to support the magistrate's decision. Moreover, we have found in the past that although objections may be brief and not supported with

further argument or case law citations, as long as they are specific and state the grounds for the objections they are adequate to preserve the issue for appeal. *Smith v. Bank of Am.*, 7th Dist. No. 11-MA-169, 2013-Ohio-4321, ¶18. Thus, the Pelliccionis have not waived this issue on appeal.

**{¶14}** When reviewing whether a civil protection order should have been granted, we employ a manifest weight of the evidence review. *Morton v. Pyles*, 7th Dist. No. 11 MA 124, 2012-Ohio-5343, ¶8. In so doing, we examine whether each of the elements of menacing by stalking were established by the preponderance of the evidence. *Id.*

**{¶15}** In applying the manifest weight standard to civil cases, the appellate court should review the whole record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility, and determine whether the trier of fact clearly lost its way and created such a miscarriage of justice that the court's order must be reversed. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517; *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In doing so, the appellate court must always be aware of the presumption in favor of the finder of fact. *Eastley*, at ¶21.

**{¶16}** R.C. 2903.211(A)(1) provides the elements of menacing by stalking: "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person."

**{¶17}** A "pattern of conduct" is two or more actions or incidents closely related in time. R.C. 2903.211(D)(1). In this case, there was evidence that the Pelliccionis took several hundred photographs of the Ramseys' property, equipment, and sometimes family over a seven-year period of time. Thus, there was clearly a "pattern of conduct."

**{¶18}** The question here is whether there was competent, credible evidence that the pattern of conduct caused the Ramseys to either believe that the Pelliccionis would cause them physical harm or caused them mental distress.

**{¶19}** There was no evidence or allegation regarding fear of physical harm. Therefore, Mrs. Ramsey had to present evidence that the Pellicionis caused the Ramseys mental distress.

**{¶20}** "Mental distress," as defined by the menacing by stalking statute, is:

(a) Any mental illness or condition that involves some temporary substantial incapacity;

(b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.

R.C. 2903.211(D)(2). The test is whether mental distress was in fact caused. *Caban v. Ransome*, 7th Dist. No. 08 MA 36, 2009-Ohio-1034, ¶23.

**{¶21}** "[M]ental distress for purposes of menacing by stalking is not mere mental stress or annoyance." *Caban*, 2009-Ohio-1034, ¶29. But evidence of a changed routine can corroborate a finding of mental distress. *Smith v. Wunsch*, 162 Ohio App. 3d 21, 2005-Ohio-3498, 832 N.E.2d 757, ¶20. Additionally, testimony that the respondent's conduct caused considerable fear and anxiety in the petitioners can support a finding of mental distress. *Retterer v. Little*, 3d Dist. No. 9-11-23, 2012-Ohio-131, ¶41. The temporary incapacity is substantial if it significantly impacts the petitioner's daily life. *Mullen v. Hobbs*, 1st Dist. No. C-120362, 2012-Ohio-6098, ¶16.

**{¶22}** Mr. Ramsey testified that in 2007 or 2008, he attended a meeting at the Ellsworth Township Zoning Office where Mr. Pelliccioni was present. (Tr. 12). Mr. Ramsey asked Mr. Pelliccioni to stop taking photographs of his property and his family. (Tr. 13). Mr. Ramsey told Mr. Pelliccioni that the photographing was upsetting his family. (Tr. 13).

**{¶23}** Mr. Ramsey further testified that at the 2014 contempt hearing, Mr. Pelliccioni introduced approximately 200 photographs of his property. (Tr. 14). He stated Mr. Pelliccioni admitted to taking these photographs from 2007 until 2013. (Tr.

14). Mr. Ramsey stated that he called the police numerous times over these years in an effort to stop the photographing. (Tr. 14).

{¶24} Mr. Ramsey also testified regarding several exhibits.

{¶25} Exhibit 1 was a sheriff's report dated October 25, 2007. The report indicated that Mrs. Ramsey complained of Mr. Pelliccioni driving by her house several times and stopping at the end of her driveway while she was outside with her two-year-old child. The report indicated that Mr. Pelliccioni admitted stopping at the Ramseys' house so that he could take pictures of their property. The report stated that a "security check" would be posted for Mrs. Ramsey that night since her husband was not at home.

{¶26} Exhibit 3 was a call log documenting 911 calls from March 8, 2007 to October 4, 2013. (Tr. 55). It documented complaints by the Ramseys on April 3, 2013, July 18, 2012, July 27, 2011, October 28, 2009, April 19, 2008, that the Pelliccionis were taking pictures of their property and family. It also documented other complaints by the Ramseys of their neighbors harassing them on May 14, 2009, November 17, 2008, March 3, 2008, and October 25, 2007.

{¶27} Exhibit 5 included a sheriff's report dated April 16, 2014. It listed the victim as Mr. Ramsey, the offense as menacing by stalking, and the method of operation as "taking photos of residence." The deputy reported that Mr. Ramsey complained that Mrs. Pelliccioni was taking photos of his property and family despite a magistrate's order for her to cease doing so. The deputy reported that Mr. Ramsey also stated this issue was "causing a great deal of undue stress on him and his family." The deputy also attached a narrative from Mrs. Ramsey. Mrs. Ramsey stated that she had filed for a CSPO because Mr. and Mrs. Pelliccioni were "constantly" taking pictures when her children were outside. She further stated that her "children have come in the house on many occasions stating that the 'creepy guy' is outside sneaking around on his roof or back by the property fence." Mrs. Ramsey further reported that she feared for her children's safety and that some of the pictures that the Pellicionis had brought to court for the zoning issue had nothing to do with

zoning and were disturbing to her.

**{¶28}** Exhibit 5 also included a sheriff's report dated March 19, 2014. In the report, the deputy reported that Mr. Ramsey stated that Mrs. Pelliccioni was taking pictures of him while he worked around his house.

**{¶29}** Exhibit 4 was a supplement to the sheriff's report dated April 16, 2014. It listed the victim as Mr. Ramsey, the suspect as Mrs. Pelliccioni, and the offense as menacing by stalking. The sheriff's deputy reported that Mr. Ramsey told him that Mr. Pelliccioni was on the roof taking pictures of Mr. Ramsey's back and side yards. Mr. Ramsey also told the deputy that he had installed a privacy fence because of the Pellicionis taking pictures of his property. Additionally, the Ramseys' son told the deputy that Mr. Pelliccioni had been looking over the Ramseys' fence while he was playing basketball with a friend.

**{¶30}** Mr. Ramsey testified that from 2007 to the present, Mr. Pelliccioni has continued to take pictures of his family. (Tr. 17). He stated this bothers him and bothers his children. (Tr. 17). Mr. Ramsey also stated, "[i]t causes stress." (Tr. 17).

**{¶31}** Mr. Pelliccioni testified that the sheriff's deputies have approached him regarding these incidents. (Tr. 60). Mr. Pelliccioni stated that he has taken all of the photos of the Ramseys' property because of the zoning issue. (Tr. 61). Mrs. Ramsey's counsel asked Mr. Pelliccioni if he was aware that what he was doing was upsetting the Ramseys to which Mr. Pelliccioni responded, "I would imagine it would make them upset." (Tr. 62).

**{¶32}** The evidence here does not support the issuance of the CSPO. There was no evidence submitted that the Ramseys suffered serious mental health issues as a result of the Pelliccionis' conduct. And there was no evidence that any of the Ramseys suffered from a condition that involved some temporary substantial incapacity.

**{¶33}** The Pelliccionis' conduct was clearly upsetting and annoying to the Ramseys. But this is not the standard to prove mental distress. In order to prove mental distress, Mrs. Ramsey was required to provide evidence of a mental illness or

condition that either (1) involved "some temporary substantial incapacity" or (2) would normally require psychiatric treatment, psychological treatment, or other mental health services. R.C. 2903.211(D)(2). The evidence did not meet this definition of mental distress.

**{¶34}** Most of the testimony and evidence concerned incidents dating back from one to seven years before Mrs. Ramsey filed for the CSPO. Had the Pelliccionis' conduct been so distressing, it would seem Mrs. Ramsey would have filed for a CSPO much sooner. And while the Ramseys contacted the police on multiple occasions, they did not show that they were at all incapacitated for any period of time or that their stress reached the level where one would normally require professional mental health services.

**{¶35}** Because the evidence failed to establish the requisite "mental distress" as defined by R.C. 2903.211(D)(2), the trial court erred in granting the CSPOs.

**{¶36}** Accordingly, the Pelliccionis' first assignment of error has merit.

**{¶37}** The Pelliccionis' second assignment of error states:

> THE TRIAL COURT ERRED WHEN IT ADOPTED THE MAGISTRATE'S DECISION GRANTING THE RAMSEY'S [sic] MOTION FOR A CIVIL STALKING PROTECTION ORDER AGAINST REBECCA PELLICCIONI.

**{¶38}** Here the Pelliccionis assert the CSPO against Mrs. Pelliccioni was not based on competent, credible evidence. They claim that Mr. Ramsey only mentioned Mrs. Pelliccioni taking pictures of the Ramseys' property or family twice during his testimony and that testimony was very vague.

**{¶39}** In light of our resolution of the Pelliccionis' first assignment of error, their second assignment of error is moot.

{¶40} For the reasons stated above, the trial court's judgments are hereby reversed.  The civil stalking protection orders against the Pelliccionis are vacated.

Waite, J., concurs.

Robb, J., concurs.