[Cite as *Burre v. Utt*, 2025-Ohio-29.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| SCOTT L. BURRE | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Petitioner-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| DEREK P. UTT | : | Case No. 2024 CA 00019 |
| | : | |
| Respondent-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:         Appeal from the Court of Common
Pleas, Case No. 2023 CP 00043


JUDGMENT:         Affirmed


DATE OF JUDGMENT:         January 6, 2025


APPEARANCES:

For Plaintiff-Appellee

STEVEN G. CARLINO
KAITLIN L. MADIGAN
101 East Town Street
Suite 500
Columbus, OH 43215

For Defendant-Appellant

LAURA A. KENDALL
1709 Spielbusch Avenue
Suite 110
Toledo, OH 43604

*King, J.*

{¶ 1}   Respondent-Appellant Derek Utt appeals the judgment of the Fairfield County Court of Common Pleas granting Petitioner-Appellee Scott Burre's request for a civil stalking protection order (CSPO). We affirm the trial court.

## FACTS AND PROCEDURAL HISTORY

{¶ 2}   In 2022, Utt began making posts on his Facebook page pertaining to Burre, Burre's wife, and his son. Utt's Facebook page is public, meaning anyone can see what Utt posts. Burre is the principal at Lancaster High School in Fairfield County, Ohio and became aware of Utt's posts when others in the community alerted him to the nature of the posts. Since November 2022 and up to the date of the full hearing in this matter, Utt had made more than 100 public posts claiming "justice" is needed for a situation involving Burre's then 14-year-old son. The matter involving Burre's son was handled through the juvenile justice system. Utt, however, believes the matter was not properly handled and suggests the manner in which it was handled it is part of a coverup involving many high-profile public officials and alleged connections between Burre, Burre's wife, and these public officials. Utt suggests in his public posts that he is taking "justice" into his own hands. Transcript of civil stalking protection order hearing, February 22, 2024 (T.) 7, 23-25.

{¶ 3}   Burre's wife was a supervisor at Fairfield County Job and Family services from 2005 to 2009, a supervisor at the Franklin County Department of Job and Family Services from 2013 to 2019, and director of Fairfield County Department of Job and Family Services from 2019 to 2021. Burre's wife never had any involvement with Utt or Utt's children. It appears that at some point Utt's children were placed in foster care

through one of these agencies. Utt blames Burre's wife and made posts accusing Burre's wife of malicious prosecution and of putting Utt's children in foster care "for profit." T. 8-9, 12-13.

{¶ 4}   Utt also made and began posting signs around town as well as on his van which read "Justice 4 Burre Rapes!!!!" Some of these signs also included what appeared to Burre to be depictions of bloody bullet holes. Utt further started a hash tag campaign on social media "#justiceforburrerapes." It concerned Burre that Utt was seeking "justice" as he was unsure what "justice" meant to Utt given his other public posts. T. 15-16.

{¶ 5}   Utt publicly posted court documents related to the situation with Burre's son. He stated in the post:

> Don't forget burres mom works for Mike dewine. Mike dewines son sits on the Ohio Supreme Court the rapes happened during election year, they burned and buried it and paid off sussi report to do the same this is corrupt at the highest level these cases and mine should have never been heard in this county where [Burre's wife] ran Cps putting kinds in foster care for profit like she did my kids [J and E] in 2009-2010.

{¶ 6}   Petitioner's exhibit 9, sic.

{¶ 7}   Utt also reposted a news story to his Facebook page about a domestic relations judge who was gunned down in his driveway in relation to a divorce case the

judge had handled. Utt captioned the post "Not all heroes wear capes." T. 15, Petitioner's exhibit 3, T. 13-15

{¶ 8} This conduct went on for some time before Burre involved law enforcement following two developments. First, Utt's posts appeared to Burre to begin encouraging or suggesting violence. Utt posted a photo of one of his signs posted on a utility pole outside Dittmar Sales with the caption "If anyone needs guns or ammo in Lancaster DITTMAR SALES IS THE PLACE TO BUY THEM!!" The caption was followed by several hashtags including the hashtag #justiceforburrerapes. On November 8, 2023 Utt posted to his Facebook page that he will "do everything legally possible before I sacrifice my freedom." Second, Utt's behavior escalated to driving his van with his signs mounted on it around the Lancaster High School campus and within a few feet of where Burre stands outside on duty as school lets out for the day. This happened on five occasions, specifically November 14, 15, 20 and 27, 2023. T. 17-18, petitioner's exhibits 5 and 11.

{¶ 9} On November 28, 2023, Burre petitioned the Fairfield County Court of Common Pleas for an ex parte emergency protection order for himself, his wife and his minor child.

{¶ 10} Burre's petition cited Utt's obsessive behaviors with himself and his family for more than a year, his Facebook posts, his presence on Lancaster High School property in close proximity to Burre, his statement that heroes shoot and kill public officials, and his post giving advice as to where to buy guns and ammunition in Lancaster. Burre also stated he had sought counseling services as a result of Utt's behavior. Petition, docket item 1.

{¶ 11} Following a hearing, an ex parte order of protection was granted by a magistrate, and Utt was ordered to stay 500 feet from the petitioner, his wife, and his minor child. Temporary order, November 28, 2023, docket item 2. The order was served upon Utt by the sheriff on December 6, 2023, and required the seizure of weapons.

{¶ 12} After the temporary order of protection was served on Utt his behavior only escalated. In January of 2024 he stood outside the Fairfield County Courthouse in frigid weather wearing a Speedo-style swimsuit and holding one of his justice for Burre rape signs. T. 33-36. On February 13, 2024, Utt was on school property handing out "Justice for Burre Rapes" wristbands to students. T. 38-39 Additionally, his signs depicting bloody bullet holes were posted on school property on February 21, 2024. T. 39-41.

{¶ 13} A full hearing was held on February 22, 2024. The magistrate heard testimony from Burre and Utt testified on his own behalf. Burre testified Utt's stated mission of taking "justice" into his own hands, that heroes shoot and kill public officials, driving his van in close proximity to Burre, and posting signs his depicting bloody bullet holes made him fear for his safety as well as that of his wife and son. T. 25, Petitioner's exhibit 11.

{¶ 14} Utt testified on his own behalf. As to his signs he stated: "My signs bring attention to local injustices going on in Fairfield County court system, mainly to do with color of law violations in this court and the Prosecutor's Office and the sheriff and police offices too." T. 107

{¶ 15} Utt testified he did not post his signs on the Lancaster High School campus and does not know who did. He stated he has given hundreds of the signs to other people and that they are available on his front porch for free. He additionally testified he has

delivered/distributed hundreds of the signs over the few months preceding the hearing. T. 113-114 Asked about what Burre understood to be a depiction of bloody bullet holes on the signs the following exchange took place:

> [Utt]: So some of the signs have holes – or dots on them. And that was an artistic expression of one of the Lancaster High School students thought of. And I thought it looked good for what the sign was trying to accomplish, which is people – you know, I want to encourage them into looking into these signs and see what they mean so they can investigate on their own and come to their own conclusions.
>
> [Counsel for Utt]: Do you intend those dots to mean anything other than artistic expression?
>
> [Utt]: No, just that and bright color, attention grabbing.

{¶ 16} Utt also appeared to construe the questioning as whether the signs had actual blood on them as opposed to a depiction of blood stating "They're definitely not blood. It's plastic spray paint." T. 124.

{¶ 17} Counsel for Utt also asked Utt about his "militia":

> [Counsel for Utt]: And you have people that follow your cause, is that correct?
>
> [Utt]: Correct, yes.

[Counsel for Utt]: And are they an armed militia?

[Utt]: I wouldn't specifically say it like that, especially people that follow this cause. I did used to deal in guns and things like that, and I did sell a lot of guns, all prior to 2016, so nothing of recent.

{¶ 18} T. 108.

{¶ 19} Utt denied driving his van within 6 to 8 feet of Burre and stated he had not been on the Lancaster High School campus since 2021. T. 148-149. As to his "not all heroes wear capes" Facebook post Utt testified in part "I would say that guy's a hero." T. 171.

{¶ 20} At the conclusion of the hearing the trial court directed the parties to submit written closing arguments to specifically address the applicability of *Bey v. Rasawehr*, 2020-Ohio-3301, to the facts of this matter and to outline what each party believed the least restrictive means of achieving a protection order would be if the trial court decided to grant Burre's petition. On May 1, 2024, after considering the parties arguments, the magistrate issued an entry granting Burre's petition for a civil stalking protection order. Utt filed a pro se objection to the magistrate's decision. On June 27, 2024, the trial court overruled the objections.

{¶ 21} Utt filed an appeal and the matter is now before this court for consideration. He raises two assignments of error as follow:

{¶ 22} "THE GRANT OF A CIVIL STALKING PROTECTION ORDER IN THIS MATTER WAS ARGUABLY PREDICATED ON PROTECTED SPEECH, WITHOUT EVIDENCE OF DIRECT CONTACT BETWEEN THE PARTIES, OR UNPROTECTED

SPEECH, SUCH THAT THE AWARD OF A CSPO WAS NOT SUPPORTED BY A PREPONDERANCE OF THE EVIDENCE."

II

{¶ 23} "IN THE ALTERNATIVE, THIS CSPO IS TOO VAGUE TO BE ENFORCEABLE."

I

{¶ 24} In his first assignment of error, Utt argues the trial court erred when it issued the CSPO because its decision hinged on protected speech and was issued without evidence of direct contact between the parties. We disagree.

Standard of Review

{¶ 25} Where the appellant asserts that there was not a preponderance of competent, credible evidence to support the CSPO, we conduct a weight of the evidence review. Weight of the evidence concerns "the inclination of the greater amount of credible evidence" supporting one side over the other. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179 ¶ 12, 17, applying *State v. Thompkins*, 78 Ohio St.3d 380, (1997). We must not substitute our judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. *Eastley v. Volkman*, 2012-Ohio-2179. The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison*, 49 Ohio St.3d 182, 189 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997).

{¶ 26} When the issue presented on review of a CSPO is the scope of the order, the standard of review is abuse of discretion. *Williams v. Hupp*, 2011-Ohio-3403 (7th Dist.) ¶ 21. "Abuse of discretion" means an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87 (1985). Most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. *AAAA Ent., Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161 (1990). An unreasonable decision is one backed by no sound reasoning process which would support that decision. *Id.* "It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.*

Civil Stalking Protection Orders

{¶ 27} A civil staking protection order "is a special statutory remedy that is designed to prevent violence." *Bey v. Rasawehr*, 2020-Ohio-3301 ¶ 16. "To be entitled to a civil stalking protection order, a petitioner must show, by a preponderance of the evidence that the respondent engaged in menacing by stalking, a violation of R.C. 2903.11, against the person seeking the order." *Tumblin v. Jackson*, 5th Dist. Coshocton No. 06CA002, 2006-Ohio-3270. "Preponderance of the evidence" is "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not." Black's Law Dictionary 1182 (6th Ed. 1990).

{¶ 28} R.C. 2903.211(A), menacing by stalking provides in relevant part:

(1) No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person. . . .

(2) No person, through the use of any form of written communication or any electronic method of remotely transferring information, including, but not limited to, any computer, computer network, computer program, computer system, or telecommunication device shall post a message or use any intentionally written or verbal graphic gesture with purpose to do either of the following:

(a) Violate division (A)(1) of this section;

(b) Urge or incite another to commit a violation of division (A)(1) of this section.

{¶ 29} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B). Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself. *State v. Jacobs*, 2021-Ohio-1611, ¶ 16 (5th Dist.) citing *State v. Huff*, 145 Ohio App.3d 555, 563 (1st Dist. 2001).

{¶ 30} A "pattern of conduct" is defined as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." R.C. 2903.211(D)(1).

{¶ 31} R.C. 2903.211(D)(2) states:

> (2) "Mental distress" means any of the following:
>
> (a) Any mental illness or condition that involves some temporary substantial incapacity;
>
> (b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.

{¶ 32} Mental distress need not be incapacitating or debilitating, and expert testimony is not required. *Rufener v. Hutson*, 2012-Ohio-5061 (8th Dist.); *Jenkins v. Jenkins*, 2007-Ohio-422 (10th Dist.). The statute does not require that the victim actually experience mental distress or physical harm, but only that the victim believes the stalker would cause mental distress or physical harm. *Z.J. v. R.M.*, 2023-Ohio-3552, ¶ 11 (5th Dist.). Further, an objective standard is to be applied to the impact upon a victim's state of mind as it relates to threatening communications. *Fleckner v. Fleckner*, 2008-Ohio-4000 (10th Dist.).

### Utt's Arguments

{¶ 33} As an initial matter, Utt makes several forward-looking arguments pertaining to what may or may not be permitted by the CSPO. He appears to conflate what is required to issue the CSPO with what constitutes a violation of the CSPO. These are two separate issues. We will not, therefore, address the forward-looking arguments as there is no violation of the CSPO before this court. Moreover, addressing Utt's forward-looking arguments would constitute an advisory opinion. We address only 1.) whether Burre met his burden of proof to warrant the issuance of the CSPO and 2.) whether the resulting CSPO infringes upon Utt's First Amendment rights.

## Menacing by Stalking

{¶ 34} In his brief, Utt appears to concede he engaged in a pattern of conduct. We agree. Through his public social media posts, hashtag campaign, posting his "Justice 4 Burre Rapes" signs all over Lancaster and on his vehicle, and driving around the Lancater High School campus when Burre was likely to be on duty outside we find Utt engaged in a pattern of conduct. He argues, however, the trial court erred in finding he knowingly caused Burre to believe Utt would cause he or his family harm. We disagree.

{¶ 35} Utt challenges each of the trial court's findings of fact arguing it was not his intent to cause Burre to believe he would cause him physical harm, and that no threats were issued directly to Burre. But Utt's subjective intent is not relevant, and a direct threat is not required by the statute. Indeed, as the Eleventh District has noted "[s]talkers engage in psychological warfare, which by its nature is devious, insidious, and subtle." *Paulus v. Rucker*, 2003-Ohio-2816 (11th Dist.) ¶ 35.

{¶ 36} A petitioner seeking a civil stalking protection order is not required to prove either purpose or intent to cause physical harm or mental distress by the respondent. Rather, it is enough that the alleged offender knowingly preformed an act that resulted in causing the victim mental distress or fear of physical harm. *A.V. v. McNichols*, 2019-Ohio-2180 (4th Dist.) ¶ 19. The issue is whether the offender acts when he is aware that his conduct will probably cause mental distress or fear of physical harm, regardless of whether it was actually his purpose to cause that result. *State v. Beckwith*, 2017-Ohio-4298 (8th Dist.) ¶ 14, citing *State v. Horsley,* 2006-Ohio-1208 (10th Dist) ¶ 47.

### The Evidence

{¶ 37} We first note that while Utt argues his social media posts, signs, and wristbands are protected speech, Utt went beyond just words when he appeared on the Lancaster High School campus and drove his van in close proximity to Burre on multiple occasions. While Utt claimed he had not been on Lancaster High School property since 2021 (T. 149) and denied driving his van near Burre, his claims are disingenuous and speak to Utt's overall lack of credibility. Burre submitted a photograph of Utt on school property on November 27, 2023 and stated this occurred on several occasions in November 2023. Petitioner's Exhibits 10 and 11. The day before the full hearing, and while the temporary protection order was in place, Utt was on school property handing out "Justice for Burre Rapes" wristbands to students. T. 38. Additionally, testimony at the CSPO hearing indicated Utt's statements regarding his children being placed in foster care by Burre's wife for profit and the matter with Burre's son being handled improperly due to a conspiracy between Burre, his wife, and elected officials were false. T. 38, Petitioner's Exhibit 11 "The First Amendment does not protect any individual who

knowingly makes false statements or expresses opinions that imply false statements of fact." *Disciplinary Counsel v. Gardner*, 2003-Ohio-4048, ¶ 15 citing *Garrison v. Louisiana*, 379 U.S. 64, 75 (1964). Utt further argues his statements do not constitute true threats. But as discussed above, the critical question here is whether the victim subjectively believed the offender would cause physical harm or emotional distress.

{¶ 38} As to the evidence produced at the hearing, Utt's Facebook page is public. He testified and even states in his brief that his goal in all the disputed actions was to "spread awareness to the situation." T. 112-113, brief of Respondent at 17. In other words, it is clear that Utt intended anything he published to social media, as well as through his signs and wristbands to reach members of the community, necessarily including Burre. And Burre did become aware of Utt's "justice" campaign. Burre believed Utt would cause him physical harm due to the inciteful nature of some posts (e.g. "you are my militia;" heroes kill public officials; advice as to where to buy guns and ammunition), the fact that Burre did not know what "justice" entailed, the depiction of bloody bullet holes on the "Justice 4 Burre Rapes" signs posted around Lancaster by Utt, and finally culminating with Utt driving his van within feet of Burre when he was on duty outside the high school. Burre testified he feared for his safety and that of his family, had sought counseling as a result, and that this wife would not go out into the community alone due to Utt's behavior. T. 42, 44, Petitioner's exhibit 11.

{¶ 39} Based on the facts and circumstances presented, we find the trial court properly concluded that Utt engaged in a pattern of conduct knowing his conduct would probably cause Burre to believe Utt would cause physical harm or mental distress to Burre or his family.  We therefore conclude the trial court's decision to grant Burre's petition is

supported by competent, credible evidence and is not against the manifest weight of the evidence.

### First Amendment

{¶ 40} Utt next argues the protection order is unenforceable because it "does not enjoin any protected speech without identifying what might be considered protected speech." Brief of respondent at 27. Because the CSPO does not regulate Utt's speech in any way, we disagree.

{¶ 41} This is not the first time Utt has raised a First Amendment challenge before this court. In *Linn v. Utt*, 2024-Ohio-3097, we noted that under the First Amendment of the United States Constitution, the " 'government [generally] has no power to restrict expression because of its message, its ideas, its subject matter, or its content.' " *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 65 (1983), quoting *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972). "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Bey v. Rasawehr*, 2020-Ohio-3301, ¶ 31, citing *Reed v. Gilbert*, 576 U.S. 155, 163 (2015). "[R]egulation of speech that is content-based is presumptively unconstitutional and is subject to strict scrutiny, which requires that it be the least restrictive means to achieve a compelling state interest." *Bey* at ¶ 22. "The right to free speech secured by the First Amendment is not absolute, however, and the government may regulate it in a manner that is consistent with the Constitution." *Bey v. Rasawehr,* 2020-Ohio-3301, ¶ 21, citing *Virginia v. Black*, 538 U.S. 343 (2003).

{¶ 42} Upon review of the CSPO, we note the relevant portions prohibit Utt from 1.) speaking directly to Burre or his family members; 2.) entering Burre's residence; 3.)

entering the place of employment of any of Burre's family members with the exception of Burre; and 4.) being within 500 feet of Burre or his family members. The CSPO contains no provisions regulating Utt's speech *about* Burre or his family members. Rather, it regulates Utt's *contact* and *proximity* with Burre and his family. In fact, the judgment entry issued contemporaneously with the CSPO specifically explains it does not prohibit Utt from speaking *about* Burre or his family to the general public. Judgment Entry, May 1, 2024 at ¶ 18. Further, since Burre is a public figure employed at a public high school, the CSPO does not prohibit Utt's presence on the Lancaster High School campus as long as he remains 500 feet away from Burre. Id. at ¶ 19.

{¶ 43} Accordingly, Utt's complaints fail because there is simply no restriction on speech set forth in the CSPO and the trial court was not required to outline what might be protected speech. We therefore find the trial court did not abuse its discretion in establishing the scope of the CSPO.

{¶ 44} The first assignment of error is overruled.

II

{¶ 45} Utt's final assignment of error argues the CSPO is too vague to be enforceable. Specifically, he argues the trial court cited to his signs and Facebook posts, declared much of it protected speech, stated he was not prohibited from engaging in protected speech, but yet threatens him with incarceration for violating the CSPO.

{¶ 46} As indicated above, however, the CSPO is clear. It in no way prohibits Utt from speaking about the persons covered by the CSPO. Rather it prohibits contact with and proximity to those people. We therefore reject Utt's vagueness argument.

{¶ 47} The second assignment of error is overruled.

{¶ 48} The judgment of the Fairfield County Court of Common Pleas is affirmed.


By King, J.,

Baldwin, J. concur and

Hoffman, P.J. concurs separately.

*Hoffman, P.J., concurring*

{¶49} I concur in the majority's analysis and disposition overruling Appellant's assignments of error.

{¶50} I write separately only to note my ongoing opinion a petitioner must actually experience mental distress if that is the basis for the petition as set forth in my concurring opinion in *Z.J. v. R.M.*, 2023-Ohio-3552 (5th Dist.).