[Cite as *Hays v. Colyer*, 2025-Ohio-724.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| RACHEL R. HAYS | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. Robert G. Montgomery, J. |
| | : | Hon. Kevin W. Popham, J. |
| -vs- | : | |
| | : | |
| CHRISTOPHER COLYER | : | Case No. 2024CA00113 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Stark County Court
of Common Pleas, Case No.
2024MI00080

JUDGMENT:     Affirmed

DATE OF JUDGMENT:     March 3, 2025

APPEARANCES:

For Plaintiff-Appellee     For Defendant-Appellant

No appearance     MYRON P. WATSON
WATSON KUHLMAN, LLC
75 Erieview Plaza, Suite 108
Cleveland, OH 44114

*Montgomery, J.*

**{¶1}** Appellant, Christopher Colyer, appeals from the issuance of a Civil Stalking Protection Order by the Stark County Court of Common Pleas in favor of Rachel Hays and against Christopher Colyer. The order remains in effect for one year from the date issued, or until June 24, 2025. Appellee, Rachel Hays, did not file a brief in response to appellant's brief or corresponding assignments of error. For the following reasons, we affirm the trial court's decision and entry granting the CSPO and overrule appellant's six assignments of error in their entirety.

## STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

**{¶2}** On March 14, 2024, Rachel Hays ("Hays") filed a petition for a civil stalking protection order ("CSPO") against Christopher Colyer ("Colyer"). The Stark County Court of Common Pleas initially granted the petition ex-parte, and the matter came before the Court for a full evidentiary hearing on May 2, 2024. At the full hearing, Hays and her counsel, Max Haupt, were present as well as Colyer and his counsel, Benjamin Zushin. The facts leading to Hays' petition, and as found by the trial court, are as follows.[1]

**{¶3}** In May 2020, Hays met Colyer through a mutual acquaintance and the two went out on a blind date. Although Colyer lived approximately two hours from Hays, the two continued to date for a little over one year, until July 2021. After this initial break up, Hays testified that Colyer continued to call, text, sometimes show up at Hays' place of work or her home without advance notice and even calling from unrestricted numbers – so much so that she began turning off her phone when she was going to and from work.

---

[1] At the beginning of the hearing Exhibits 1 through 30 were introduced and admitted into evidence, predominantly a series of text threads, a couple of pictures, and a voicemail that was recorded. Colyer's attorney stipulated to the admission of the Exhibits. See Tr. of Proc., May 2, 2024, p. 8.

See Tr. of Proc. ("Tr."), May 2, 2024, at pp.11-12. Hays alluded to the intensity of their relationship and that it had been a roller coaster of emotions (while dating and after the break-up). Tr. at pp. 13-14. After the break-up, Colyer told Hays he would get counseling but always told her "what [she] wanted to hear." Tr. at p. 15.

{¶4} In August 2021, Hays reached out and texted Colyer to wish him a happy 40th birthday, an act she later regretted. Said contact led to a brief rekindling of their relationship, even attending a counseling session together in November 2021 "to discuss all of the stuff that had transpired while we were broken up and just the emotional distress, the intensity, just - - somehow we got back together after that which was very short lived." Tr. at p. 12. They saw each other one time in December 2021, then Hays ultimately broke up with Colyer a second time on or about February 3, 2022.

{¶5} After this second breakup in February 2022, Hays had little contact with Colyer. Indeed, as the trial court found, Hays tried to make it clear to him that she was not going to get back together with him. Exhibits 1-30, stipulated by counsel at the full hearing and fully reviewed and considered by the trial court, indicate that Hays sent several messages to Colyer telling him in various ways that she wished to go her separate way. Nonetheless, in May 2022, upon her return from a trip to Columbus, Hays noticed gifts on her front porch including notes from Colyer, a collage of photographs from the time they dated, and a two-year anniversary card. Hays testified that this incident caused her fear and a general feeling that something was "not right" because he included the anniversary card but they had been broken up for three months.

{¶6} On or about June 7, 2022, Colyer texted "I love you" to Hays. Later that same day, around just before midnight, Hays woke up to a loud "rapping" at her door, and

her phone began ringing at the exact same time.  Colyer was outside of Hays' home and told Hays "I need to talk to you. I am downstairs." Hays testified that the hair on the back of her neck stood up as she went downstairs. Tr. at pp. 19-20.  Hays spoke to Colyer through a window screen - she did not want to open the door - and told him to stop and to leave her alone.  Hays was indeed scared after this incident, even calling her parents to talk to them about it.

**{¶7}**   In July 2022, Colyer continued to text Hays, but Hays ignored everything from him.  One day, Hays was driving with her minor children on Route 62, and Colyer's car appeared next to her (despite him living 2 hours away), kept pulling up in front of her until he finally sped up and pulled into a farm market.  Again, Hays was very scared and later had her car inspected to ensure he had not placed a GPS device on her vehicle; however, there was no evidence of any such device.

**{¶8}**   Colyer's behavior continued until February 2023, more than one year after they broke up the second time.  As noted by the trial court, Hays provided exhibits as well as testimony to show that she did not want anything to do with Colyer, that his pattern of behavior was increasing, that she did not think he would stop, and that she went to the police due to his continued behavior.  Although the police initially stated they could not assist Hays, she continued to ignore his efforts.  Colyer began showing up at her house and he made repeated phone calls.  Hays testified that due to his behavior, she changed some aspects of her life.  On one occasion, one of her children accidentally answered the phone; it was Colyer calling from an anonymous number.  After this call, Colyer left a voicemail stating how much he loved and missed Hays and that he was going to move closer to Hays because he wanted to be in a relationship with her.  Indeed, the voicemail

was admitted into evidence as Exhibit 19 and the trial court found it corresponded to Hays' testimony.

**{¶9}** After this voicemail, Hays went to the police a second time, and thereafter, Colyer was instructed to have no contact with her. Unfortunately, Colyer disregarded said order and, on April 21, 2023, he was arrested, charged, and placed on GPS monitoring until his criminal trial began, which was approximately nine (9) months. During this time, Colyer had no contact with Hays, and Hays testified that she felt better during this time. On January 4, 2024, Colyer was acquitted of the felony charge "menacing by stalking." The court found that the evidence presented did not satisfy the *criminal burden* of beyond a reasonable doubt. However, the criminal court did impose a "good behavior" period for six months, starting from the date of the acquittal. Between April 21, 2023, and March 26, 2024, there was no contact between Hays and Colyer.

**{¶10}** As stated, on March 14, 2024, nearly a year after the last contact, Hays filed her petition for CSPO against Colyer. An ex-parte order issued, with a full evidentiary hearing on May 2, 2024, before a Magistrate. At the full hearing, both parties were afforded the opportunity to present witnesses, exhibits, arguments, etc. Hays testified a CSPO was necessary due to Colyer's prior conduct, outlined in detail above. Hays testified to her fear and mental distress, attended counseling due to Colyer's behavior, and at the time of the hearing, continued to seek counseling treatment. Colyer, by and through counsel, fully cross-examined Hays, and made his best arguments against issuing the CSPO. Through cross-examination, Hays admitted that their relationship lasted about a year, that due to Colyer's work schedule he would sometimes call at odd times (e.g. while she was driving to and from work), that she initiated the contact in August

2021 for his 40th birthday, and that they were in fact intimate in December 2021. Hays further admitted that between January 4, 2024, and March 26, 2024, there was no contact from Colyer.

**{¶11}** After closing arguments by counsel, the Magistrate refrained from ruling from the bench and decided to take the matter under advisement. The Magistrate stated that both parties made "good arguments," but the court wanted to "take a look at all the text messages" and review the "applicable law to understand some things that I don't know. I want to know more about subjective perception versus objective perception." See Tr. at p. 94. Shortly thereafter, the Magistrate rendered a detailed Decision with Findings of Fact and Conclusions of Law ("Decision").

**{¶12}** The Magistrate concluded that Hays proved by a "preponderance of the evidence" that Colyer engaged in menacing by stalking sufficient to justify imposition of the CSPO. See R.C. 2903.214(C) and R.C. 2903.211. The Decision states that although no single incident may rise to the necessary level of stalking, Colyer's "pattern of conduct," taken as a whole and despite Hays' repeated requests to stop, established that Hays believed Colyer may harm her and that Colyer did in fact cause Hays severe emotional distress. Therefore, the Magistrate recommended a full CSPO in effect for one year (rather than 5 years as requested by Hays) to begin June 24, 2024, and expire on June 24, 2025. The trial judge adopted the Magistrate's decision and recommendation. Colyer timely filed the instant appeal. Colyer asserts six (6) assignments of error, all of which argue in some way that the trial court improperly found sufficient evidence to issue the CSPO.

## SPECIFIC ASSIGNMENTS OF ERROR

{¶13} "I. THE TRIAL COURT ERRED IN FINDING SUFFICIENT EVIDENCE TO SUPPORT THE ISSUANCE OF A CIVIL STALKING PROTECTION ORDER UNDER R.C. 2903.214;

{¶14} II. THE TRIAL COURT ERRED IN ISSUING A CSPO DESPITE EVIDENCE THAT THE PETITIONER VOLUNTARILY REKINDLED CONTACT WITH RESPONDENT AFTER THE ALLEGED HARASSMENT BEGAN;

{¶15} III. THE TRIAL COURT ERRED IN RELYING ON THE ABSENCE OF REBUTTAL EVIDENCE BY RESPONDENT TO JUSTIFY THE ISSUANCE OF THE PROTECTION ORDER;

{¶16} IV. THE TRIAL COURT ERRED BY FAILING TO CONSIDER THE TIME GAP BETWEEN THE ALLEGED CONDUCT AND THE ISSUANCE OF THE PROTECTION ORDER;

{¶17} V. THE TRIAL COURT ERRED IN FAILING TO ACKNOWLEDGE AND GIVE WEIGHT TO RESPONDENT'S ACQUITTAL ON MENACING STALKING CHARGES, WHICH DIRECTLY IMPACTS THE CREDIBILITY OF THE PETITIONER'S CLAIMS;

{¶18} VI. THE MAGISTRATE AND THE JUDGE COMMITTED GRAVE ABUSE OF DISCRETION AMOUNTING TO LACK OR EXCESS OF JURISDICTION IN ISSUING THE CSPO."

## STANDARD OF REVIEW

{¶19} Although appellant asserts six different assignments of error, the first, second, third, and fourth are interrelated, address the "evidence" submitted and relied upon by the trial court, and will be addressed together.

{¶20} When an appellant argues that insufficient evidence exists to support the trial court's decision, a reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179. The weight to be given the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182, (1990). The trier of fact "has the best

opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418 (1997); *Seasons Coal Co. v. City of Cleveland* (1984), 10 Ohio St.3d 77, 80 (1984) (stating that the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony). If the issue on appeal is the *scope* of the CSPO (e.g. tailored in some way), the standard of review is abuse of discretion. *Williams v. Hupp*, 2011-Ohio-3403, ¶ 21 (7th Dist.). Here, appellant maintains that there was insufficient evidence to issue the CSPO in the first instance such that the scope is not in question. *Burre v. Utt*, 2025-Ohio-29, ¶¶ 25, 26 (5th Dist.).

## CIVIL STALKING PROTECTION ORDERS

**{¶21}** Importantly, a CSPO "is a special statutory remedy that is designed to prevent violence" *before* it happens. *Burre,* supra, at ¶ 27, citing *Bey v. Rasawehr*, 161 Ohio St.3d 79 (2020). The petitioner has the burden of proving entitlement to the CSPO by a *preponderance of the evidence.* *Olenik v. Huff*, 2003-Ohio-4621, ¶17-18. "Preponderance of the evidence" is "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not." *Burre*, at ¶ 27, quoting Black's Law Dictionary 1182 (6th Ed. 1990).

**{¶22}** R.C. 2903.214 governs the issuance of stalking civil protection orders and provides in relevant part: "(C) A person may seek relief * * * by filing a petition with the court. The petition must state both of the following: (1) [a]n allegation that the respondent engaged in a violation of section 2903.211 [menacing by stalking] * * * against the person

to be protected by the protection order, including a description of the nature and extent of the violation; and (2) [a]request for relief under this section." *Baddour v. Fox*, 2000 WL 1719569, *2 (Fifth Dist. Nov. 15, 2000).

**{¶23}** R.C. 2903.211 defines "menacing by stalking" and provides "(A)(1) No person by engaging in a pattern of conduct shall *knowingly* cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person * * *(emphasis added)." A person acts *knowingly, regardless of purpose*, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. *Burre,* supra, at ¶ 29, citing R.C. 2901.22(B).[2] Whether a person acts knowingly is determined by examining all the surrounding facts and circumstances, including the doing of the act itself. *Burre,* at ¶ 29, citing, *State v. Jacobs*, 2021-Ohio-1611, 2021 WL 1828102, ¶ 16 (5th Dist.); S*tate v. Huff*, 145 Ohio App.3d 555, 563, 763 N.E.2d 695 (1st Dist. 2001).

**{¶24}** A "pattern of conduct" is defined as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." R.C. 2903.211(D)(1). The Court may consider every action "even if some actions in isolation would not seem particularly threatening." *Middletown v. Jones*, 167 Ohio App.3d 679, 2006-Ohio-3465, ¶ 10 (12th Dist).

**{¶25}** Finally, R.C. 2903.211(D)(2) defines "[m]ental distress" as one of the following:

---

[2] In other words, a petitioner is not required to prove either purpose or intent to cause the physical harm or mental distress. It is sufficient that the alleged offender knowingly preformed an act that resulted in causing the victim mental distress.

Any mental illness or condition that involves some temporary substantial incapacity;

Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.

**{¶26}** Mental distress need not be incapacitating or debilitating, and expert testimony is not required. See *Burre,* supra, at ¶ 32; citing *Rufener v. Hutson,* 2012-Ohio-5061, 2012 WL 5364703 (8th Dist.); *Jenkins v. Jenkins*, 2007-Ohio-422 (10th Dist.). When proving mental distress, a temporary incapacity is substantial if it significantly impacts the petitioner's daily life - evidence of a changed routine is pertinent. *Id.* at ¶ 17, citing *Ramsey v. Pellicioni,* 2016-Ohio-558, ¶ 21 (7th Dist.). Thus, "[a]n inability to sleep or concentrate on work can qualify as a temporary substantial incapacity, and consultation with a mental health provider is some evidence of mental distress*. Id.* Moreover, "[t]estimony that a respondent's conduct caused the person considerable fear can support a finding of mental distress." *A.V. v. McNichols,* 2019-Ohio-2180, ¶ 24 (4th Dist.); *Miller v. Leome*, 2024-Ohio-1325, ¶ 10, (7th Dist.).

### COLYER'S ARGUMENTS

**{¶27}** As set forth above, appellant's first four assignments of error address the "evidence" the trial court relied upon, or not, in issuing the CSPO. Appellant argues (1) there was insufficient evidence overall to issue the CSPO, meaning Hays failed to meet the preponderance of the evidence burden of proof; (2) the trial court failed to properly consider the fact that Hays voluntarily reached out to Colyer in August 2021 to "rekindle"

the relationship; (3) the trial court improperly relied on the absence of rebuttal evidence by Colyer; and (4) the trial Court did not consider the "time gap" and his compliance with legal restrictions/orders between the alleged conduct and the issuance of the CSPO. We disagree with appellant's arguments.

**{¶28}** A thorough review of the transcript of proceedings, as well as the trial court's Decision containing detailed Findings of Fact and Conclusions of Law, reveals that the trial court carefully weighed the evidence after conducting a full evidentiary hearing. Rather than ruling from the bench, the Magistrate took the matter under advisement to properly assess the evidence and review the applicable law and ultimately determined that Hays tipped the scales in her favor.

**{¶29}** In addition to Hays' testimony – both direct and on cross, the parties stipulated to Exhibits 1 through 30 and such exhibits were admitted into evidence. In so stipulating, Colyer's attorney stated that the exhibits "are predominantly a series of text threads although Exhibit 19 is the voicemail that was recorded." Tr. at p. 8. In its decision, the trial court found that after the couple broke up in February 2022, and after approximately a year of ignoring him or trying to ignore him, Hays was worried "it was not going to stop." See Magistrate's Decision at p. 5, Finding of Fact 28. Indeed, Hays demonstrated *over* **102 contacts** *to her from Colyer in the 13 months* **after** *the second break-up in February 2022*. Id., Findings of Fact 28, 30. Such contacts included a voicemail in February *2023* from Colyer stating how much he loved her, missed her, and wanted to move closer to her; Hays was "very scared" after this incident. Id., Finding of Fact 31.

**{¶30}** After the voicemail, Hays relayed the information to the police a second time and the police swiftly issued a no contact order. Within weeks, Colyer again contacted Hays, so he was arrested, criminally charged, and placed on GPS monitoring. Hays testified that Colyer caused her such mental distress that she "has continued to attend treatment due to the fear and distress [Colyer] has caused her." See Decision at p. 5, Finding of Fact 36. The Decision acknowledges that while no single incident may have risen to the level required for issuance of a CSPO, Colyer's actions overall, despite repeated requests and nonreciprocity by Hays, established by a preponderance of the evidence that Hays believed Colyer may harm her and did in fact cause Hays severe emotional distress. This Court agrees.

**{¶31}** After a thorough review of the record, this Court agrees that Hays met her burden of proof by tipping the scales in her favor. As such, there is competent, credible evidence to support the trial court's decision to issue the CSPO.

**{¶32}** Regarding Colyer's argument that Hays "rekindled" the relationship when she texted him on his 40th birthday, Hays admitted to said action and Colyer's counsel fully cross-examined Hays on the issue. After a brief rekindling, Hays redetermined in early February 2022 that the relationship was not healthy and wanted to go her separate ways. As set forth above, it was *after* this second break-up in February of 2022 that the pattern of conduct *increased*. Contrary to Colyer's argument that he simply continued to try and "romance" Hays, in the hopes of her getting back with him, a reasonable person could interpret the increased pattern of conduct by Colyer to be a very real problem.

**{¶33}** Similarly, Colyer's argument that the trial court improperly relied on a lack of rebuttal evidence is without merit. Again, Colyer stipulated to the exhibits, had a full

opportunity to cross-examine Hays' testimony, present his own evidence, and argue his position. The trial court acknowledged that "both parties made good arguments" and took the matter under advisement as opposed to issuing the CSPO right then and there. The lower court simply examined all of the evidence and other than cross-examination, Colyer did not present much.

{¶34} Next, Colyer argues the trial court failed to consider the "time gap" between the last alleged conduct and the issuance of the order, as well as Colyer's compliance with court orders and restrictions. Again, Colyer's argument is unpersuasive to find error on appeal. The Decision expressly speaks to the time gap but ultimately concluded that such gap was "attributable to the fact that a no contact order was in effect, with GPS monitoring, in a related criminal case, and the lapse of time since the criminal trial concluded is attributable to existence of an ex parte [CSPO] in this case." Magistrate's Decision at p. 9. In essence, the trial court considered this information but ultimately rejected Colyer's assertion that the "time gap" and his compliance was somehow proof that he could and would leave Hays alone. Thus, there is no basis to claim the trial court failed to consider anything when it simply rejected the argument given Colyer's prior actions.

{¶35} For these reasons, we find the trial court properly concluded that Hays proved by a preponderance of the evidence that Colyer engaged in a pattern of conduct *knowing* his conduct would cause Hays to believe Colyer would cause physical harm or mental distress to her. Colyer did in fact cause Hays significant mental distress for which she sought treatment. **Accordingly, Colyer's first, second, third, and fourth assignments of error are overruled**.

**{¶36}** In his fifth assignment of error, Colyer claims the trial court erred in failing to acknowledge and give weight to Colyer's acquittal on criminal menacing stalking charges, which directly impacts the credibility of Hays' claims. We disagree. Again, a review of the record indicates the trial court was fully aware of the criminal charges, his arrest, the GPS monitoring, and ultimate outcome. Colyer's not guilty verdict on criminal charges is, simply stated, irrelevant in a corresponding civil case. The standard of proof to issue a CSPO pursuant to R.C. 2903.14(C) is much less stringent – a preponderance of the evidence, tipping the scales ever so slightly – compared to the much more stringent criminal standard of proof which is beyond a reasonable doubt. Further, R.C. 2903.211 defines a "pattern of conduct" as two or more actions closely related in time "whether or not there has been a prior conviction based on any of those actions." R.C. 2903.211(D)(1). **For these reasons**, **appellant's fifth assignment of error is overruled**.

**{¶37}** In his sixth and final assignment of error, Colyer claims "the Magistrate and the Judge Committed Grave Abuse of Discretion Amounting to Lack or Excess of Jurisdiction in Issuing the CSPO." Again, Colyer's assertion has no merit. As fully set forth above, the Magistrate conducted a full evidentiary hearing with equal opportunity to both parties. After the hearing, the Magistrate carefully reviewed the testimony, evidence, and all applicable law in rendering a very detailed decision with Findings of Fact and Conclusions of Law. Finding no error, the trial court readily adopted said decision. Because the trial court's decision to grant Hays' petition was proper and is supported by competent, credible evidence and is not against the manifest weight of the evidence, **appellant's sixth assignment of error is overruled.**

## CONCLUSION

{¶38} Based upon the foregoing, appellant's first, second, third, fourth, fifth, and sixth assignments of error are overruled and the judgment of the Stark County Court of Common Pleas, is affirmed in all respects.


By: Montgomery, J.

Popham, J. concur.

Hoffman, P.J., concurs separately.

*Hoffman, P.J., concurring*

**{¶39}** I concur in the majority's analysis and disposition overruling Appellant's assignments of error.

**{¶40}** I write separately only to note my ongoing opinion a petitioner must actually experience mental distress if that is the basis for the petition as set forth in my concurring opinion in *Z.J. v. R.M.*, 2023-Ohio-3552 (5th Dist.).